UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Civil Action No.: 15-CV-7923

| | |
|---|---|
| SYNCARPHA PALMER, LLC,<br>      Plaintiff,<br>v.<br>TODD BARD and LEE ENERGY GROUP,<br>      Defendants. | **DEFENDANTS'<br>ANSWER AND<br>COUNTERCLAIMS** |

## ANSWER

Defendants Todd Bard and LEE Energy Group, by its attorneys, Charnas Law Firm, P.C., as and for their Answer to plaintiff's Complaint, upon information and belief, sets forth the following:

1. Defendants lack sufficient information to form a belief as to the truth of the allegations.

2. Admitted.

3. Admitted.

4. Admitted.

5. Denied.

6. Defendants lack sufficient information to form a belief as to the truth of the allegations.

7. Defendants lack sufficient information to form a belief as to the truth of the allegations.

8. Defendants lack sufficient information to form a belief as to the truth of the allegations.

9. Admitted.

10. Admitted, except that defendants deny that the Palmer facility was then under construction.

11. Denied.

12. Defendants admit that defendant Bard had never previously concluded a power purchase agreement with plaintiff or REM, and deny the remainder of the allegations.

13. Defendants admit the allegations except they deny that such discussions began in March of 2015 and/or when such discussions progressed toward a purchase agreement, and deny that plaintiff acted in the spirit of good faith in or around March 2015.

14. Denied.

15. The allegations are in regard to legal issues, and defendants refer same to the court for determination. To the extent there are allegations of wrongdoing by defendants, they deny same.

16. Defendants admit that defendant Bard demanded payment under the contract, admit that there is an actual controversy, and deny the remainder of the allegations.

17. Denied.

> **WHEREFORE**, answering defendants demand judgment dismissing defendant's claim for a judgment declaring that plaintiff is not indebted to defendants, and for legal fees and costs of suit where applicable.

## COUNTERCLAIM

### Facts

1. Defendant/counterclaim plaintiff LEE Energy Group is a unincorporated entity, based in Agawam, Massachusetts, and, at all times relevant to this action, was in

the business of negotiating and facilitating contracts between Massachusetts sellers of wind and solar power and Massachusetts municipal and institutional purchasers of such power ("off-takers").

2. Defendant/counterclaim plaintiff Todd Bard ("Bard") is an individual, and is the sole owner and employee of LEE Energy Group.

3. At all times relevant to this action, defendant/counterclaim plaintiff Bard was well-known to a significant number of off-takers and potential off-takers in Massachusetts, and had a reputation amongst them for honesty, integrity, trustworthiness, or his knowledge of multiple facets of the alternative power industry, and as well as for his skill in negotiating and facilitating fair contracts for the purchase of wind and solar power.

4. By the summer of 2014, plaintiff/counterclaim defendant Syncarpha Palmer, LLC was engaged, directly and through its agent Renewable Energy Massachusetts, LLC ("REM"), in efforts to obtain contracts for the purchase of energy to be generated from its planned solar power projects in Leominster and Palmer, Massachusetts.

5. Sometime during the summer of 2014, plaintiff/counterclaim defendant entered into an agreement ("the agreement") with defendants/counterclaim plaintiffs to pay them to help facilitate and negotiate contracts with potential off-takers to purchase solar power from plaintiff/counterclaim defendant's planned solar energy plants in Leominster and Palmer, Massachusetts ("plaintiff's solar plants").

6. More specifically, the agreement required plaintiff/counterclaim defendant to pay defendants/counterclaim plaintiffs consideration of $.0025 for each kilowatt hour of solar power to be generated by plaintiff's solar plants and sold by plaintiff/counterclaim

defendant under contracts that defendants/counterclaim plaintiffs helped facilitate and negotiate. Said fees would be paid annually for the life of such contracts, though defendants/counterclaim plaintiffs did also agree to have some flexibility in terms of how the payments were to be structured.

7. The type of agreement above-described is common in the alternative power industry in Massachusetts. It is also common in that industry, in Massachusetts, for such agreements to be reduced to writing and signed by both parties after consummation of the sale to an off-taker or off-takers.

8. Nevertheless, the essential terms of the agreement were set forth, collectively, in various emails between the parties and/or their agents, and the agreement is valid and binding on the parties.

9. After the agreement was agreed-to as aforesaid, defendants/counterclaim plaintiffs expended substantial efforts in order to facilitate and negotiate contracts with potential off-takers for plaintiff's solar plants, including working with Worcester State University ("WSU") for such purpose.

10. Largely through the efforts of defendants/counterclaim plaintiffs, a contract was agreed to between WSU and plaintiff/counterclaim defendant for the purchase and sale of 4.2 million kilowatt hours of electricity annually to be produced by plaintiff/counterclaim defendant's Palmer solar facility.

11. When it came time for defendants/counterclaim plaintiffs to claim their previously agreed-to fee for their work on the WSU contract, plaintiff/counterclaim defendant, through its president, Clifford Chapman ("Chapman"), first attempted to

reduce the fee substantially.

12. More specifically, plaintiff/counterclaim defendant, through Chapman, first attempted to have the fee paid in a lump sum, using an unreasonable discount rate that had the effect of substantially reducing the amount to be paid under the agreement. That offer was rejected by defendants/counterclaim plaintiffs as less than required under the agreement.

13. Plaintiff/counterclaim defendant, through Chapman, persisted in offering to pay defendants/counterclaim plaintiffs less than what was required under the agreement in regard to the WSU contract, claiming that defendants/counterclaim plaintiffs did not deserve their full fee due to their failure to perform sufficient work under the agreement.

14.  Finally, in about September, 2015, plaintiff/counterclaim defendant refused to pay defendants/counterclaim plaintiffs anything in regard to the WSU contract. Later, plaintiff/counterclaim defendant claimed that there was no agreement to pay defendants/counterclaim plaintiffs anything for their work on plaintiff/counterclaim defendant's behalf, and further claimed that any such agreement, to be binding, had to be in writing and that there was no such written contract.

15. On information and belief, at all times relevant to the action, plaintiff/counterclaim defendant's Chapman knew defendants/counterclaim plaintiffs were performing work under the assumption that there was a valid and enforceable agreement to pay them pursuant to the agreement for work done on the WSU project.

16. On information and belief, and at all times relevant to the action, plaintiff/counterclaim defendant believed it could benefit from and otherwise exploit the work of defendants/counterclaim plaintiffs in regard to the aforementioned WSU

contract, and not be legally required to pay them for such work because it believed, mistakenly, that there was no enforceable written agreement between the parties.

17. Plaintiff/counterclaim defendant, a wealthy and well-funded corporation operating out of its New York City headquarters, filed suit against defendants/counterclaim plaintiffs in this New York court, seeking declaratory judgment that there was no binding agreement to pay defendants for their work on the WSU contract.

18. Plaintiff/counterclaim defendant filed suit in New York, rather than Massachusetts, in order to increase the cost to defendants/counterclaim plaintiffs – a small businessman and his one-man company operated out of Bard's home in Agawam, Massachusetts- of litigating the matter in controversy.

19. Defendants/counterclaim plaintiffs have completely fulfilled their obligations under the agreement in regard to the WSU contract.

20. Plaintiff/counterclaim defendant has failed and refused to pay defendants/counterclaim plaintiffs their fee under the agreement.

**COUNT I (Breach of Contract against Counterclaim Defendant Syncarpha)**

21. Plaintiff/counterclaim defendant's failure to pay defendants/counterclaim plaintiffs the fee due under the agreement constitutes a breach of the agreement.

**WHEREFORE**, defendants/counterclaim plaintiffs Todd Bard and LEE Energy Group demand judgment against plaintiff/counterclaim defendants Syncarpha Palmer,

LLC in the amount of ONE HUNDRED FIVE THOUSAND DOLLARS and ZERO CENTS ($105,000), plus interest and costs.

### COUNT II (M.G.L. c.93A against Counterclaim Defendant Syncarpha)

22. Massachusetts General Law, c.93A, Section 2 and Section 11 make illegal unfair or deceptive acts or practices in the conduct of trade or business.

23. Plaintiff/counterclaim defendant knowingly continued to secure substantial benefits from defendants/counterclaim plaintiffs, believing, mistakenly, at all relevant times that it could take those benefits without having to compensate defendants/counterclaims plaintiffs due to a technical defect in the agreement.

24. When those benefits had been fully conferred upon plaintiff/counter claim defendant, it then refused to pay on the improper ground of lack of enforceable contract.

25. When defendants/counterclaim plaintiffs insisted on their fees due under the agreement, plaintiff/counterclaim defendant brought a declaratory action in New York rather than Massachusetts for the purpose of making litigation more expensive and time consuming for defendants/counterclaim plaintiffs.

26. These acts or practices of the plaintiff/counterclaim defendant, individually and/or together, are in breach of the covenant of good faith and fair dealing implied in every contract, and constitute a knowing and willful violation of Massachusetts General Laws, c. 93A, Section 2 and Section 11.

**WHEREFORE**, defendants/counterclaim plaintiffs Todd Bard and LEE Energy Group demand judgment against plaintiff/counterclaim defendants Syncarpha Palmer, LLC:

a) in the amount of actual damages, doubled or trebled;

b) for payment of defendants/counterclaim plaintiffs' attorneys fees incurred in defense of the declaratory judgment action and in prosecution of the counterclaims; and,

c) interest and costs of the action.

**PLAINTIFFS DEMAND TRIAL BY JURY ON COUNT I OF THE COUNTERCLAIM**

Dated: New York, New York
       March 9, 2016

                                              Yours, etc.

                                              ___/Scott E. Charnas_____
                                              SCOTT E. CHARNAS, ESQ.
                                              SC7167
                                              CHARNAS LAW FIRM, P.C.
                                              Attorneys for the Plaintiffs
                                              455 E. 51st Street
                                              New York, New York 10022
                                              Tel: 212-980-6800
                                              Fax: 212-980-1871
                                              Email: scharnas@charnaslawfirm.com

**CERTIFICATE OF SERVICE**

      I certify that, on March 9, 2016, this ANSWER AND COUNTERCLAIM was filed through the ECF system, and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                                              /s/ Scott E. Charnas___
                                              Scott E. Charnas